WILLIAM H. THOMAS (ISB 3154)
THOMAS, WILLIAMS & PARK, LLP
225 N. 9th St., Ste. 810
P.O. Box 1776
Boise, ID  83701-1776
Telephone:  (208) 345-7800
Fax:  (208) 345-7894
wmthomas@thomaswilliamslaw.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CAMERON K. MILLER, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>AVERTEST, LLC d/b/a AVERHEALTH, a<br>Commonwealth of Virginia limited liability<br>company,<br><br>　　　　　　　　　　Defendant. | **Case No.  1:18-cv-00388**<br><br><br>**COMPLAINT WITH DEMAND<br>FOR JURY TRIAL** |

　　　　Plaintiff, Cameron Miller ("Plaintiff" or "Mr. Miller") through his counsel, for his claims

against Avertest, LLC. d/b/a AverHealth, ("Employer", "Avertest" or "Defendant") alleges:

### I.  JURISDICTION AND VENUE

　　　　1.  Jurisdiction of this Court is invoked under 28 U.S.C. § 1331.  This action is authorized

and instituted under the Family and Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601 et seq.

The Court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367.

　　　　2.  The acts allegedly occurred in Ada County, Idaho and caused the claims.  The

employment practices alleged to be unlawful were committed within this jurisdiction, and venue is proper in the Southern Division of the District of Idaho under 28 U.S.C. § 1391(a)(3) and under D.Id.L.Civ.R. 3.1.

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES
## TO AMEND THIS COMPLAINT

3.  On August 23, 2018, Plaintiff had filed a charge of discrimination jointly with the Idaho Human Rights Commission ("IHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC") alleging Defendant Avertest, LLC violated the Americans with Disabilities Act ("ADA") as amended.  Upon exhausting his administrative remedies and receipt of a notices of right to sue from the IHRC and EEOC, Plaintiff will move to amend this Complaint to include causes of action for the appropriate remedies under the ADA.

## III.  THE PARTIES

4.  Plaintiff, Cameron Miller, is an individual residing in Canyon County, Idaho.

5.  Defendant, Avertest, LLC d/b/a AverHealth ("Avertest"), a Commonwealth of Virginia limited liability company with its headquarters at 1700 Bayberry Ct. Ste. 105, Richmond, VA 23226.  Avertest is, upon information and belief, a drug testing service, doing business in Ada County, Idaho.

6.  Defendant Avertest at all times, continuously had at least fifty (50) employees employed for at least twenty (20) calendar workweeks.

## IV.  FACTUAL ALLEGATIONS

7.  Plaintiff worked for Avertest from June 2015, to until approximately August 14, 2018. Plaintiff was employed as Avertest's Area Manager.

8.  Plaintiff has worked at least 1,250 hours during the past twelve (12) months prior to August 14, 2018.

9.  Defendant is an employer covered by the FMLA and employs fifty (50) or more employees.

10.  On June 27, 2018, Plaintiff was involved in a motorcycle incident heading downhill on a steep grade.  Plaintiff's motorcycle steering froze up with him heading off the road toward a steep ravine.  After several harrowing attempts to control the motorcycle, it came to a stop with the front wheel hanging over the ravine side of the road.

11.  Plaintiff was in shock and was terrified to get back on his motorcycle.  Assisted by Plaintiff's girlfriend, he finally returned home.  The 20-mile trip took two (2) hours.  The trip was so stressful, Plaintiff barely traveled over 35 miles per hour with his girlfriend driving behind him with her flashers on.

12.  July 2, 2018, Plaintiff was scheduled to travel to Pocatello.  During the trip, Plaintiff experienced severe panic and anxiety.  That evening, Plaintiff went to a physician who prescribed a beta blocker.

13.  The next day, Plaintiff could not return to Boise without assistance.  Plaintiff could not drive faster than 60 miles per hour and took several frontage roads.  Plaintiff made it to Mountain Home, but could not go on.  Finally, an employee drove Plaintiff back to Boise.

14.  July 5, 2018, Plaintiff saw Dr. Keri Erland who restricted Plaintiff's driving and prescribed medication for severe anxiety.  Plaintiff worked from home for several days.

15.  July 12, 2018, Plaintiff returned to Dr. Erland who ordered him not to return to work for two (2) weeks, prescribed him medication and told the Plaintiff that he needed to consult a

counselor.

16.   July 25, 2018, Dr. Erland released Plaintiff to return to work.  Dr. Erland completed Plaintiff's Family and Medical Leave Act (FMLA) paper work.  The FMLA paperwork was sent to Defendant.

17.   Under the FMLA certification of Plaintiff's serious health condition, Dr. Erland authorized Plaintiff to attend follow-up appointments consisting of counseling every two (2) weeks and a physician's appointment every month.

18.   Dr. Erland diagnosed Plaintiff with panic disorder and PTSD.  Dr. Erland found that Plaintiff needed to attend follow-up treatments or work on a reduced schedule; needed to attend counseling every two (2) weeks; and have medical appointments every month.  The doctor found Plaintiff's condition would cause episodic flare-ups requiring Plaintiff to be absent from work.

19.   July 30, 2018, Plaintiff returned to work.

20.   August 8, 2018, Dominique Delagnes, Defendant's Chief Operating Officer ("Delagnes") had flown to Boise the previous day from Defendant's Virginia headquarters.

21.   August 9, 2018, at approximately 5:00 p.m., Delagnes told Plaintiff that Defendant wanted to fire Plaintiff with six (6) weeks of severance pay.  Confusingly, after telling Plaintiff he was fired, Delagnes told Plaintiff he could sign a performance improvement plan.  Plaintiff considered the allegations in the performance plan to be false and fabricated.  Under pressure from Delagnes, Plaintiff signed the plan.

22.   August 13, 2018, Plaintiff received a severance contract and a termination letter saying Plaintiff was fired immediately.

23.   As of August 14, 2018, Delagnes told Plaintiff he was fired.

24.  Defendant discharged Plaintiff based on his disability and used fabricated performance issues never previously brought to his attention to terminate his employment.

25.  Until August 9, 2018, Plaintiff had received no verbal or written warnings about any performance issue.

26.  On every yearly evaluation, Plaintiff consistently was evaluated as exceeding expectations.

27.  In December 2016, Plaintiff was given an unexpected $1,000 bonus.

28.  In December 2017, Plaintiff was awarded a luxury vacation to Cancun, Mexico, for his superior performance.

29.  In March of 2018 during annual raises, Plaintiff was given twice the percentage (8%) of the company's cap (4%).

## V.  FIRST CLAIM FOR RELIEF
### Family Medical Leave Act
### Interference
### 29 U.S.C. §2915

30.  Plaintiff, Mr. Miller, alleges and incorporates the allegations in paragraph 1 to 29.

31.  Defendant qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4)

32.  Plaintiff is an "eligible employee" as the term is defined in the FMLA, 29 U.S.C. § 2611(2).

33.  Plaintiff had an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1).

34.  To this Complaint, Plaintiff provided Defendant timely and sufficient notice of his "serious health condition" and of Plaintiff's need and intent to take FMLA leave.

35.  During his employment, Plaintiff attempted to exercise his rights to use FMLA leave.

36.  Defendant interfered with Plaintiff's FMLA rights and entitlements by issuing a disciplinary notice and, ultimately, terminating his employment despite having been authorized to take FMLA leave on July 29, 2018.

37.  As a direct and proximate result of Defendant's interference with Plaintiff's rights and entitlements under FMLA, Plaintiff suffered damages in amounts to be proven.  Such damages include, but are not limited to, past and future lost wages, salary, employment benefits, and other compensation denied or lost by Defendant's FMLA violations.  Plaintiff is entitled to interest at the prevailing rate for Plaintiff's lost wages and benefits.  Plaintiff is entitled to an additional amount as liquidated damages.

38.  Defendant's violation of Plaintiff's FMLA rights mandate that the Court, besides any judgment awarded to Plaintiff, include attorneys' fees, expert witness fees and other costs.

## VI.  SECOND CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress

39.  Plaintiff, Mr. Miller alleges and incorporates the allegations in paragraph 1 to 38.

40.  Defendant's, through the individuals identified, conduct was extreme, outrageous and reckless and such conduct caused Plaintiff extreme emotional distress.

41.  Defendant's, through the individuals identified, actions in issuing a disciplinary notice without basis, retaliating against Plaintiff for exercising his right to FMLA leave, suspension from employment, and, finally, employment termination is negligent and caused such physical symptoms including but not limited to headaches and sleeplessness.

42.  As a direct and proximate result of Defendant's negligent infliction of emotional distress, Plaintiff suffered damages in an amount to be proven.

**PRAYER**

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment in his favor and against Defendant, and award this relief:

a.  Entry of a judgment for Plaintiff and against Defendant for the actual and/or compensatory damages sustained by Plaintiff for violations identified and any other injury or claim that may be discovered during the discovery process for which the law holds Defendant liable and responsible in an amount to be determined by a jury;

b.  Actual and compensatory damages to include lost past and future wages; lost past and future benefits, including, but not limited to lost vacation, lost bonuses, lost sick leave, lost medical benefits, lost retirement plan, and other like employee benefits; past and continuing emotional distress, mental anguish, pain and suffering, humiliation, and enjoyment of life;

c.  Under 29 U.S.C. § 2617(a)(3), 42 U.S.C. § 12205 and I.R.C.P. Rule 54, reasonable attorneys' fees, court costs, and expert witness fees, regarding pursuing Plaintiff's rights under this cause of action; and,

d.  A judgment for such other relief, general or specific, as the Court may deem appropriate, just and equitable.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES.**

Plaintiff respectfully demands a trial by jury on all issues.

DATED this 30th day of August, 2018.

THOMAS, WILLIAMS & PARK, LLP


_____*/s/ William H. Thomas*_____
William H. Thomas
Attorney for Plaintiff

COMPLAINT WITH DEMAND FOR JURY TRIAL – Page 7